UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARK DUANE BISHOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-788 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Mark Duane Bishop applied for social security disability benefits, arguing that he was disabled due to his back pain, shoulder pain, obesity, and mental health, among other issues. The Commissioner found that Mr. Bishop was still capable of working a number of jobs despite his limitations, so it denied his application. Mr. Bishop now appeals that decision. For the reasons below, the Court reverses the Commissioner's decision and remands for further proceedings.

### I. FACTUAL BACKGROUND

Mr. Bishop worked for many years in jobs that were very physically demanding. He claims that he eventually had to quit at the age of 56, primarily due to extreme pain that he suffered in his back and shoulder. He thus applied for Disability Insurance benefits and Supplemental Security Income benefits, claiming he was no longer able to work. He cited the pain from his back and shoulder due to degenerative disc and joint disease, which may have also been exacerbated by his obesity. He also had respiratory problems due to a history of smoking, and further claimed to have mental limitations due to depression and anxiety.

Mr. Bishop's treating physician, Dr. Seluzhitskiy, completed a form in May 2013 outlining her opinion as to Mr. Bishop's physical limitations, indicating that Mr. Bishop was quite limited in his ability to lift, carry, stand, or walk, among other limitations. The agency reviewing physicians opined in July and August 2013 that Mr. Bishop was not nearly as limited, though. They opined that Mr. Bishop could lift up to 50 pounds occasionally and 25 pounds frequently, and that he could sit, stand, and walk up to 6 hours in a workday. After holding a hearing in April 2015, at which Mr. Bishop and a vocational expert testified, the Administrative Law Judge largely adopted the agency reviewing physicians' opinions in those respects, and gave little weight to the opinion of Mr. Bishop's treating physician. Based on the vocational expert's testimony that a person with those limitations could still perform other jobs, the ALJ found that Mr. Bishop did not qualify as disabled. Accordingly, the ALJ denied Mr. Bishop's claims. The Appeals Council denied review, making the Commissioner's decision final, so Mr. Bishop filed this action seeking review of that decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

2

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Bishop offers several arguments in support of reversal. He first argues that the ALJ failed to seek an updated medical opinion to address evidence that his condition was worsening, and improperly relied on the opinions of reviewing physicians that predated that evidence. Second, he argues that the ALJ erred in discounting the credibility of his testimony as to his own limitations. And third, he argues that the ALJ failed to offer valid reasons for discounting the

opinions of his treating physician. The Court addresses each argument in turn, and finds that remand is required for each of those reasons.[1]

A.     **Evidence of a Worsening Condition**

Mr. Bishop first argues that the ALJ should have sought an updated medical opinion as to his limitations in light of objective evidence that his condition was worsening, and that the ALJ improperly relied on opinions of agency reviewing physicians that predated that new evidence. The agency reviewing physicians' opinions were rendered in July and August 2013, and the ALJ adopted each of the exertional and postural limitations included in those opinions. In particular, the ALJ found, consistent with those opinions, that Mr. Bishop could lift 50 pounds occasionally and 25 pounds frequently, and that he could stand, walk, or sit for up to six hours in a workday. In support of those opinions, the reviewing physicians cited various evidence in the record, noting (among other evidence) that an x-ray from September 2012 showed only "mild degenerative changes" in Mr. Bishop's lumbar spine, and that a straight leg raise test (which is used to help determine the cause of low back pain) was negative. (R. 86, 112).

Subsequent evidence, however, suggested that Mr. Bishop's condition was worsening. Most notably, Mr. Bishop underwent an MRI in June 2014 that reflected more significant findings. It showed that Mr. Bishop had "moderate facet joint arthropathy" at L4-5 in his lumbar spine, and "prominent facet joint arthropathy" at L5-S1, along with other "moderate" and "mild to moderate" findings as to disc bulges and neural foraminal narrowing. (R. 397). The examiner's impression included "degenerative changes of the lumbar spine including multilevel degenerative disc disease and more prominent facet joint arthropathy" and "moderate" neural

---

[1] The Court thus does not reach Mr. Bishop's additional argument that the ALJ erred in declining to adopt additional limitations based on his mental conditions, though Mr. Bishop is free to pursue that issue on remand.

foraminal narrowing. *Id.* In addition, whereas Mr. Bishop's straight leg tests were previously negative, multiple such tests after that point, from August 2014 through March 2015, were positive. (R. 426, 428, 433). Examination notes from that period further described Mr. Bishop's problems as "worsening" and described the progressively increasing severity of his symptoms. (R. 432, 428, 425, 403).

New evidence showing a worsening of a claimant's condition generally calls for an ALJ to seek an updated medical opinion that addresses that evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding that the ALJ erred in not seeking an updated medical opinion after the claimant submitted an evaluation that "contained significant, new, and potentially decisive findings"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (holding that the ALJ erred by failing to seek an updated medical opinion after an MRI showed that the claimant's condition was worsening). Here, the ALJ offered two reasons for apparently concluding that this evidence did not show that Mr. Bishop's limitations were worsening, but neither reason was sound.

The ALJ first noted that during the same period that the evidence showed Mr. Bishop's condition was worsening, Mr. Bishop declined a lumbar steroid injection that his doctor recommended. A failure to pursue recommended treatment can be a reason to conclude that the symptoms are not as severe as claimed, but before drawing such an inference, an ALJ has a duty to consider *why* the claimant has not pursued that treatment. *Stage*, 812 F.3d at 1125 (holding that the ALJ erred in rejecting evidence of a worsening condition due to the claimant's failure to undergo surgery, "without exploring why she had not" done so); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"); SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their

functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The ALJ never did so here. That omission is particularly notable because Mr. Bishop repeatedly referenced his lack of resources and his inability to pay for basic needs during his testimony at the hearing. (R. 41 (noting that his income consisted of $50 a week that he received from his daughter, plus any money he received by turning in aluminum cans for recycling), 48, 54–57 (noting that he lost his Medicaid coverage for several months), 58 ("I just go outside and walk around and that's – with a limited income, I can't drive very far. I don't have – you know, the money for the gas or anything.")); *see also* R. 432 (noting that Mr. Bishop had been without medication because he lost his insurance). The ALJ did inquire at the hearing as to how long Mr. Bishop had been without Medicaid coverage, but he never followed up to ask how his lack of coverage during that period or his minimal resources throughout the relevant time period affected his ability to pursue treatment. The ALJ's decision did not even acknowledge this factor, either, and it was improper for the ALJ to rely on Mr. Bishop's failure to pursue treatment without doing so.

The second reason the ALJ offered was that Mr. Bishop was still "noted as being able to perform basic and instrumental activities of daily living," including bathing, dressing, toileting, feeding, light housekeeping, and laundry, among others. (R. 23). A claimant's activities of daily living are an appropriate factor for an ALJ to consider. However, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). That Mr. Bishop can get dressed, go

7

to the bathroom, and perform the basic necessities to get from day to day says little about whether he is physically able to maintain full-time employment. *Roddy*, 705 F.3d at 639; *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Nor is it apparent how those daily activities contradict Mr. Bishop's testimony about his limitations or the evidence that his condition was worsening. The activities of daily living that Mr. Bishop testified to (and that are reflected elsewhere in the record) are rather modest, and in some cases were performed with difficulty or with accommodations such as rest breaks. (R. 57–59, 61, 66–67). The ALJ never identified any inconsistency or articulated why a person with Mr. Bishop's alleged symptoms would be unable to perform those basic tasks. Thus, this factor does not support the ALJ's decision, either.

Accordingly, the Court finds that the ALJ erred by failing to seek an updated medical opinion to address the evidence suggesting that Mr. Bishop's condition was worsening. Because that evidence could support a more restrictive residual functional capacity assessment than the ALJ adopted, this error requires a remand to the Commissioner for further proceedings.

**B.     Credibility**

Mr. Bishop next argues that the ALJ erred in discounting his statements about the severity of his limitations. In reviewing an ALJ's credibility determination, courts "'merely examine whether the ALJ's determination was reasoned and supported,'" and will overturn a credibility determination only when it is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Here, in concluding that Mr. Bishop was exaggerating his limitations, the ALJ essentially cited the same reasons discussed as to the last issue, so his decision is deficient for the same reasons.

The ALJ began by noting that Mr. Bishop's treatment "has been essentially routine and/or conservative in nature." (R. 25). In considering this factor, though, the ALJ relied in part

8

on the fact that Mr. Bishop declined to receive an injection and had never received physical therapy, which had also been recommended. *Id.* As just discussed, it was improper for the ALJ to rely on that factor without first exploring the reasons that Mr. Bishop did not undergo that treatment. *Stage*, 812 F.3d at 1125; *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). The second reason the ALJ offered was that Mr. Bishop's "activities of daily living are not limited to the extent one would expect, given his allegations of disabling symptoms." (R. 25). As also just discussed, that explanation does not support the ALJ's credibility finding, either, as the ALJ did not identify any respect in which those activities were inconsistent with Mr. Bishop's claimed limitations such that they detract from his credibility as to those limitations, and Mr. Bishop's ability to perform basic daily tasks does not demonstrate an ability to maintain full-time employment. *Roddy*, 705 F.3d at 639; *Bjornson*, 671 F.3d at 647. Accordingly, the Court finds that the ALJ has not offered a reasoned and supported explanation for his credibility finding, so remand is required on that basis as well.

### C. Treating Physician

Last, Mr. Bishop argues that the ALJ erred in evaluating the opinion of his treating physician, Dr. Seluzhitskiy. "A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013).[2] An ALJ is not required to accept a treating physician's opinion, but an "ALJ who declines to give controlling weight to the opinion of a treating physician must offer 'good reasons' that are 'sufficiently specific' in explaining what weight, if any, she assigned it." *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

---

[2] The applicable regulations have since been amended, but the amendments took effect after Mr. Bishop's claim, so they do not apply here. 20 C.F.R. § 404.1520c.

9

Here, Mr. Bishop's treating physician completed a form in which she offered her opinions as to Mr. Bishop's physical abilities. She opined, for example, that Mr. Bishop could lift or carry "less than 10 pounds" either occasionally (up to a third of the day) or frequently (up to two-thirds of the day), and that he could sit for 20 minutes at a time and about 2 hours in a workday, and stand 10 minutes at a time and less than 2 hours in a workday. The ALJ declined to give this opinion controlling weight, and instead gave it "little weight." (R. 27).

The ALJ began his discussion of this opinion by stating that it is "inconsistent with other substantial evidence in the record." (R. 27). He never proceeded to explain how, though. Perhaps he was referring to the opinions of the agency reviewing physicians, who offered less-restrictive limitations. But in adopting their opinions, all the ALJ said was that they "are consistent with the record." (R. 25). Thus, the ALJ's decision does not adequately articulate why Dr. Seluzhitskiy's opinion should be discredited as inconsistent with the record. The ALJ also said that Dr. Seluzhitskiy's opinion was inconsistent with Mr. Bishop's testimony about his ability to lift. In particular, the ALJ noted that Dr. Seluzhitskiy opined that Mr. Bishop could lift less than 10 pounds, whereas Mr. Bishop testified that he could lift 20 to 30 pounds. In actuality, however, there was no contradiction. The form Dr. Seluzhitskiy completed asked how much Mr. Bishop could lift for up to a third of the work day, and Dr. Seluzhitskiy checked "less than 10 pounds." When the ALJ asked Mr. Bishop at the hearing if he could lift 20 or 30 pounds, Mr. Bishop said that he could, but the ALJ never asked if he could sustain that for up to a third of the workday. (R. 53–54). Mr. Bishop also qualified his response by saying that he couldn't lift that amount for

a long period of time.³ *Id.* Thus, this testimony does not actually create an inconsistency with Dr. Seluzhitskiy's opinion.

The ALJ also noted an internal inconsistency in Dr. Seluzhitskiy's opinion as to Mr. Bishop's limitations in "feeling." Dr. Seluzhitskiy first checked a box indicating that Mr. Bishop was "unlimited" in that regard, but then proceeded to check a box stating that Mr. Bishop could perform that activity "occasionally," meaning up to a third of the day. (R. 309). It is true that those check marks were inconsistent, but the ALJ never explained why a single errant checkmark as to this one limitation would call into question all of Dr. Seluzhitskiy's opinions as to Mr. Bishop's other limitations, such as his ability to stand or lift. The final reason the ALJ offered for giving little weight to Dr. Seluzhitskiy's opinion was that Mr. Bishop was *more* limited than her opinion in one respect, as Dr. Seluzhitskiy did not include a limitation concerning pulmonary irritants, "but subsequent records demonstrated that the claimant had a moderately severe obstruction." (R. 27). The ALJ did not explain, however, nor is it otherwise apparent, how finding Mr. Bishop to be more restricted than Dr. Seluzhitskiy's opinion in this one respect supports a conclusion that Mr. Bishop is much less restricted as to many other unrelated limitations.

For those reasons, the Court cannot find that the ALJ offered good reasons, supported by substantial evidence, for giving little weight to the opinion of Mr. Bishop's treating physician, so remand is also warranted for this reason. That is not to say that the ALJ must accept that opinion, but he must revisit this issue on remand.

---

³ The ALJ even acknowledged that qualification in another portion of his decision, noting that Mr. Bishop "testified that he could lift twenty to thirty pounds, albeit infrequently." (R. 24).

11

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: January 16, 2018

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court